Robert A. ZANDER, Plaintiff,

v.

DEPARTMENT OF JUSTICE and
Federal Bureau of Prisons,
Defendants.

Civil Action No. 10–2000 (JDB).

United States District Court,
District of Columbia.

June 20, 2012.

Opinion Granting Reconsideration
In Part Oct. 31, 2012.

Robert A. Zander, Raleigh, NC, pro se.

Melissa Gaspar Rasmussen, U.S. Attorney's Office for the District of Columbia, Washington, DC, for Defendants.

## MEMORANDUM OPINION

JOHN D. BATES, District Judge.

Plaintiff Robert A. Zander was previously incarcerated in a Bureau of Prisons facility in Butler, North Carolina. In June 2010, Zander sent requests to the Department of Justice under the Freedom of Information Act ("FOIA") for information relating to his incarceration. In response to his requests, the Department of Justice and Bureau of Prisons ("defendants") released some records to Zander, but withheld other material. Zander has sued under FOIA to challenge the withholding of this material. He also alleges that the defendants have failed to adequately search for material responsive to his requests and that they are actively involved in a cover-up of criminal conduct involving the Bureau of Prisons.

Now before the Court are the parties' cross-motions for summary judgment. On September 15, 2011, the Court referred this matter to Magistrate Judge John M. Facciola for a report and recommendation. Magistrate Judge Facciola issued a Report and Recommendation recommending that each side's motion be granted in part and denied in part.[1] More specifically, Magistrate Judge Facciola recommended that a video be turned over to Zander with "redactions" (the blurring of certain images in the video), ordered additional documents to be turned over to him for *in camera* inspection, recommended that summary judgment be granted for defendants with respect to the adequacy of the search, and recommended that other portions of Zander's FOIA requests be denied for failure to exhaust administrative remedies. Defendants turned over the documents for *in camera* inspection, and, upon review, Magistrate Judge Facciola further recommended that the documents be released with certain redactions.

Both Zander and defendants have timely filed objections to the Magistrate Judge's Report and Recommendation. Defendants contend that both the video and the other documents fall under applicable FOIA exemptions and therefore should not be released to Zander. Zander argues that he is entitled to a *Vaughn* index with respect to the documents turned over for *in camera* review. Zander also contends that the defendants' search for documents was inadequate.

The Court accepts the Magistrate Judge's recommendation regarding the portions of Zander's FOIA requests that should be denied for failure to exhaust administrative remedies, as neither party has objected to this recommendation. For the reasons described below, the Court accepts the Magistrate Judge's recommendation with respect to the adequacy of the search and rejects Zander's request for a *Vaughn* index. The Court accepts with one modification the Magistrate Judge's recommendation regarding the documents submitted for *in camera* review. These documents will be ordered released as recommended with one additional redaction. Finally, the Court rejects the Magistrate Judge's recommendation with respect to disclosure of the video, finding that the video is properly withheld because its release could endanger BOP officials.

I. *Background*

The Court will not reiterate the full factual background of this case, which is described in the Report and Recommendation. *See* Report and Recommendation (Sept. 16, 2011) [Docket Entry 33] ("R & R") at 1–2. Zander made FOIA requests to the Department of Justice relating to his incarceration in a Bureau of Prisons facility. The Bureau of Prisons conducted a search and released certain documents to him, but claimed exemptions apply to other materials, barring their disclosure. *See* R & R at 4–6. Two types of materials remain at issue, having been the subject of the parties' timely objections to the Report and Recommendation.[2] First, the Bureau

---

1. Although defendants filed two separate motions, one labeled as a motion to dismiss or, in the alternative, for summary judgment and the other labeled as a motion for summary judgment, in part, Magistrate Judge Facciola construed the parties' motions as cross-motions for summary judgment. The Court sees no need to do otherwise.

2. Zander argues that defendants' objections to the Magistrate Judge's Report and Recommendation are untimely. *See* Pl.'s Resp. in Opp'n to Defs.' Objections to Mag. J.'s Sept. 16, 2011 Report and Recommendation [Docket Entry 39] ("Pl.'s Resp.") at 1–2. On September 30, 2011, the deadline for filing objections to the Report and Recommendation, the Court ordered the pending motions to be ter-

of Prisons has withheld a video of Zander being forcibly removed from his prison cell on March 17, 2008. R & R at 4, 6. Defendants argue that disclosure of the video would endanger the physical safety of BOP employees by revealing the equipment, tactics, and procedures used in removing inmates from cells. *See* Defs.' Objections to the Mag. J.'s Report and Recommendation (Sept. 30, 2011) [Docket Entry 34] ("Defs.' Objections I") at 3–8. Second, BOP withheld a group of documents either authored by or directed to defendants in a civil action being pursued by Zander in the Eastern District of North Carolina. R & R at 1, 4–6. Most of the documents are letters and signed forms from BOP employees to the Department of Justice, indicating that the employees have been sued by Zander and seek representation by the Department. *See id.* at 10–11. The remainder of the documents are two e-mails to and from BOP employees, BOP attorneys, and DOJ attorneys. *See id.* The Magistrate Judge reviewed all these documents *in camera* and then recommended that they be released with certain redactions. *See id.* at 11–14. Defendants argue that these documents should be withheld entirely under the attorney-client privilege or the attorney work product doctrine. *See* Defs.' Objections to the Mag. J.'s Recommended Redactions and Production of Documents Submitted for In Camera Review (Dec. 1, 2011) [Docket Entry 45] ("Defs.' Objections II") at 3–12. Zander also objects to defendants' failure to provide a *Vaughn* index for the material submitted for *in camera* review, as well as the overall adequacy of defendants' search. *See* Pl.'s Objections to Mag. J.'s Report and Recommendation (Nov. 28, 2011) [Docket Entry 42] ("Pl.'s Objections") at 2–8.

## II. *Legal Standard*

### a. *Summary Judgment*

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *see also Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "If the evidence is merely colorable, or is not significantly probative, summary

minated because the Court believed no objections had been filed. *See* Minute Order of Sept. 30, 2011 [Docket Entry 36]. In fact, defendants had filed objections shortly before the Court terminated the pending motions, so the Court then vacated the termination. *See* Minute Order of Oct. 12, 2011. Hence, the objections were timely filed.

judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. 2505.

b. *The Freedom of Information Act*

 The Freedom of Information Act, 5 U.S.C. § 552, requires federal agencies to release all records responsive to a proper request except those protected from disclosure by any of nine enumerated exemptions set forth at 5 U.S.C. § 552(b). A district court is authorized "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *see also Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 139, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). The agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. Cent. Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978) (internal citation and quotation marks omitted); *accord Maydak v. DOJ,* 218 F.3d 760, 764 (D.C.Cir.2000). The district court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981); *accord Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973).

c. *Magistrate Judge Recommendations*

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered his recommended disposition, a party may file specific written objections. The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R.Civ.P. 72(b)(3). The district court may then "accept, reject, or modify the recommended disposition." *Id.*

III. *Discussion*

a. *Disclosure of Video*

 BOP has withheld from disclosure a video of Zander being forcibly removed from his prison cell on March 17, 2008. Zander has received a report of the incident, which included the names of the BOP officers involved. R & R at 6. The Magistrate Judge recommended that the video be edited "in a way that will obliterate the faces" of the officers involved and then released, concluding that "[o]nce that is done, the safety of these law enforcement officers would in no way be further compromised" and that "obliteration of their faces would protect their privacy." *Id.* at 8–9. The Magistrate Judge also rejected BOP's concerns regarding the expense of editing the video and the allegedly minimal value of the video after editing. *See id.* at 8–10.

Defendants now object to the disclosure of the video with the recommended "redactions." Defendants contend that the Magistrate Judge's analysis with respect to FOIA exemption 7(F) was in error regarding the video. *See* Defs.' Objections I at 3–7. That provision, 5 U.S.C. § 552(b)(7)(F), exempts from FOIA disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ...

could reasonably be expected to endanger the life or physical safety of any individual." Defendants maintain that "the videotape sought by Plaintiff shows BOP's Calculated Use–of–Force Team enter the Plaintiff's cell, apply restraints, and remove him from the cell, depicting the equipment, tactics, movements, and procedures used during the incident." Defs.' Objections I at 6. Defendants argue that "producing the video, even with the faces of the officers obscured, would nonetheless disclose the equipment, tactics, and procedures utilized by the BOP Calculated Use–of–Force Team" and that "such disclosure could reasonably be expected to endanger the lives or physical safety of *any* BOP officers who subsequently utilize those techniques and equipment in the course of their duties." *Id.* at 5. Furthermore, defendants contend that the video should be withheld because obliterating the protected information would be burdensome to the agency and the remaining information would be of little value. *Id.* at 7–8.

Zander contends that defendants' argument against disclosure is undermined by BOP policy, which contemplates that cell extractions will be recorded "to defend against unfounded allegations and eliminate the unwarranted use of force." Pl.'s Resp. at 2 (quotation marks omitted). Zander also maintains that the video should be released because it will reveal "flagrantly unlawful" conduct and because the public has a right to know what type of force officers employ. *Id.* at 2–4.

The Court finds that the video is properly withheld under FOIA exemption 7(F). Exemption 7(F) most clearly applies to protect law enforcement officials from disclosure of information that could prove threatening to them. *See, e.g., Blanton v. DOJ,* 182 F.Supp.2d 81, 86–87 (D.D.C. 2002), *aff'd,* 64 Fed.Appx. 787 (D.C.Cir. 2003); *Pfeffer v. Dir., U.S. Bureau of Prisons,* 1990 U.S. Dist. LEXIS 4627, at *4–5 (D.D.C. Apr. 17, 1990) (approving withholding of information by BOP relating to escape plans and smuggling of weapons into prisons).[3] It has also been said that courts should, "within limits, defer to the agency's assessment of danger." *Linn v. DOJ,* 1995 WL 631847, at *9 (D.D.C. Aug. 22, 1995) (citing *Gardels v. CIA,* 689 F.2d 1100, 1104–1105 (D.C.Cir.1982)).

Such deference is not necessary here because the Court concludes that the agency's assessment of the possible danger to law enforcement officials from disclosing the video is abundantly reasonable. Removing prisoners from their cells presents clear dangers to the law enforcement officers who are charged with the task. Disclosure of a recording of a "cell extraction" presents the possibility that other prisoners will learn the methods and procedures utilized by BOP officials, and that this information might be used to thwart the safe application of these techniques in the future. The Court does not mean to suggest that plaintiff himself presents such a danger, but dissemination to the public at large does present clear risks to

3. Although "FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed," *Audubon Soc. v. U.S. Forest Service,* 104 F.3d 1201, 1203 (10th Cir.1997), courts have countenanced the withholding of information under exemption 7(F) when the disclosure could arguably endanger people who are not members of law enforcement or even referenced in the material. *See, e.g., Living Rivers, Inc. v. U.S. Bureau of Rec-* *lamation,* 272 F.Supp.2d 1313, 1321 (D.Utah 2003) (approving withholding of maps of Hoover and Glen Canyon dams because disclosure could endanger downriver residents in the event of a terrorist attack). *But see ACLU v. Dep't of Def.,* 543 F.3d 59, 82 (2d Cir.2008) (denying withholding when the government articulated the danger as being to "the public at large," rather than a "specific, identifiable set of individuals").

law enforcement officials. With respect to Zander's argument that the purpose of recording the procedure is to guard against "unfounded allegations and eliminate the unwarranted use of force," the Court finds that, even if this is the reason (or part of the reason) why BOP records the procedure, disclosure via FOIA is still not warranted. The policy as represented by Zander need not be construed to demand public disclosure in order to be effective. Recording the procedures may allow supervisory officials *within* prisons to verify prisoner allegations of misconduct and to ensure that cell extractions are not performed unnecessarily forcefully. Furthermore, the disclosure of videos during litigation may be possible without broader dissemination to the public, through the use of, for example, sealed docket entries or protective orders. These mechanisms of ensuring the limited distribution of information, and therefore the protection of the safety of prison staff, are not available in the FOIA context. Finally, the Court agrees with defendants that the video will be of little or no value to anyone once information about cell extraction procedure is segregated out, so providing the video after removing this information does not make sense.

b. *Disclosure of Documents*

The Magistrate Judge also considered BOP's response to Zander's request for "all communications to or from the defendants in *Zander v. Lappin* [the lawsuit Zander brought against BOP employees in North Carolina] regarding the subject matter . . . of that litigation." R & R at 10–14 (alteration in original). BOP located documents responsive to this request in a "litigation file" and characterized the documents in three categories: (1) letters from the BOP employees who were sued by Zander to DOJ, seeking legal representation; (2) correspondence between BOP

employees and BOP counsel pertaining to the employees' involvement in the lawsuit; and (3) e-mail communications between DOJ attorneys and BOP employees and counsel pertaining to the status of the litigation. *Id.* at 10–11. BOP withheld these documents on the ground that "any disclosure of such records could result in the disclosure of attorney client privileged information and/or attorney work product, including facts regarding defendants['] personal involvement in the allegations asserted." *Id.* at 11 (alteration in original). The Magistrate Judge found this response inadequate under the requirements to describe each document withheld and segregate the exempt portion of documents from non-exempt portions. *Id.* at 11. He concluded that "[s]ince only the most general description of the content of the file is provided, I cannot possibly determine whether every document in it was in fact prepared for trial or in anticipation of litigation." *Id.* at 12. He further noted that "the work product privilege is subdivided into fact and opinion work product and the former may yield" under certain circumstances and also that "communications by the client that only state that which everyone already knows . . . are not privileged." *Id.* at 12–13 (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 254 (D.C.Cir.1977)). Accordingly, the Magistrate Judge ordered that the documents be produced for *in camera* review. *Id.* at 13–14. He then reviewed the documents and recommended that they be released to Zander with some redactions, which he indicated to BOP and the Court. The Court has reviewed the original documents and the recommended redactions.

The majority of the reviewed documents are letters and accompanying signed forms from BOP employees to the Department of Justice, indicating that the employees have been sued by Zander and seek representa-

tion by the Department. There are also two e-mails to and from BOP employees, BOP attorneys, and DOJ attorneys. It appears that the Magistrate Judge has intended to redact any material from the documents that does not fall into the category of information "which everyone already knows," *see* R & R at 13—that is, he has redacted the non-public information, leaving the public information for disclosure. To summarize without revealing any protected detail, the redacted information consists of each employee's description of Zander's allegations and the employee's account of his or her participation (or lack thereof) in the alleged events.

Defendants object to the recommendation to release the documents as redacted. *See* Defs.' Objections II at 3–9. They argue that the disclosure letters and accompanying forms should be withheld under FOIA Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Defendants contend that the letters and forms constitute confidential communications protected by the attorney-client privilege. Defs.' Objections II at 3–9. They maintain that the Magistrate Judge erred in relying on *Mead Data* for the proposition that "[t]he privilege does not allow the withholding of documents simply because they are the product of an attorney-client relationship" and that "[i]t must also be demonstrated that the information is confidential." *Mead Data*, 566 F.2d at 253. Defendants argue that more recent precedent—specifically, *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377 (D.D.C.1978)—recognizes a different rule. Defs.' Objections II at 6–7. Furthermore, defendants contend that the two e-mail communications between counsel and BOP employees should not be disclosed because they "are protect-

ed by the attorney-client and attorney[ ]work product privileges in that they constitute statements by a client intended to be confidential for purposes of seeking counsel as well as statements prepared by counsel in contemplation of litigation." Defs.' Objections II at 9–12.

At the outset, it is worth noting that not much really hangs on the outcome of defendants' objection—at least with respect to the materials at issue in the present case—because the documents (as redacted) hardly contain much information at all. As to the "representation letters" and accompanying signed forms, the Court finds that the documents must be disclosed to the extent the information has already been made public, with proper redactions for other nonpublic material. Defendants' contention that the rule articulated in *Mead Data* was somehow modified by *In re Ampicillin* is simply incorrect. *In re Ampicillin* addressed the attorney-client privilege in the context of civil discovery and explicitly distinguished *Mead Data* and the FOIA context:

> In *Mead Data*, the court was examining the applicability of the attorney-client privilege to an exemption five claim under the Freedom of Information Act (FOIA). After stating that the privilege does have "a proper role to play in exemption five cases," the court said that for the privilege to apply "[i]t must also be demonstrated that the information is confidential." However, the court made clear that it was addressing the attorney-client privilege's role in exemption five cases and not in any other context. . . . The court then proceeded to mention some of the policy considerations particular to a FOIA case, that would not be applicable to an antitrust case such as the case at bar, such as the overall congressional intent of ensuring

comprehensive public access to government records.

*In re Ampicillin*, 81 F.R.D. at 388 n. 21 (quoting *Mead Data*, 566 F.2d at 252, 255, 255 n. 28) (alteration in original). Hence, *In re Ampicillin* essentially stated that it was *not* departing from *Mead Data*. *See also State of Maine v. Dep't of Interior*, 298 F.3d 60, 71–72 (1st Cir.2002) ("The DOI erroneously assumes that the requirement of client communicated confidentiality is satisfied merely because the documents are communications between a client and attorney.... *'It must also be demonstrated that the information is confidential.'*" (quoting *Mead Data*, 566 F.2d at 253)). *But see Wishart v. Comm'r of Internal Revenue*, 1998 WL 667638, at *5–6, 1998 U.S. Dist. LEXIS 13306, at *16–18 (N.D.Cal. Aug. 6, 1998) (applying the exemption to correspondence between government employees and the Justice Department without distinguishing between FOIA and civil discovery).

To be sure, there is some tension between *Mead Data's* statement that "discovery rules should be applied to FOIA cases only 'by way of rough analogies,'" 566 F.2d at 252 (quoting *EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)), and the plain language of the statute, which explicitly exempts from disclosure documents "which would not be available by law to a party ... in litigation with the agency," 5 U.S.C. § 552(b)(5). *See W. Trails, Inc. v. Camp Coast to Coast*, 139 F.R.D. 4, 10 (D.D.C.1991) (Attridge, Mag. J.) (discussing *Mead Data* and *In re Ampicillin* and concluding that "[i]t is unclear, therefore, whether the same standard of confidentiality applies to claims of attorney-client privilege in the context of civil discovery" as under FOIA Exemption 5); *see also Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184–86 (D.C.Cir.1987) ("[T]he exact relationship between ordinary civil discovery and Exemption (b)(5),

particularly the application of discovery privileges under the exemption, has bedeviled the courts since the Act's inception."). The statute's plain text seems to indicate that the attorney-client privilege ought to be fully incorporated in the FOIA context. But since the D.C. Circuit's decision in *Mead Data* has not been revisited, the Court will accept the Report and Recommendation's basic premise that the letters and forms must be disclosed, with appropriate redactions for non-public information under the rationale of *Mead Data*.

With respect to the two e-mails, the question is somewhat different because the material, according to defendants, falls into the narrower category of "attorney work product," rather than the broader attorney-client privilege. *See* Defs.' Objections II at 9–12. "The work-product doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney ...).'" *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C.Cir.2005) (quoting Fed. R. Civ. Pro. 26(b)(3)(A)); *see also Mervin v. FTC*, 591 F.2d 821, 825 (D.C.Cir.1978) ("The attorney work product privilege protects 'against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" (quoting Fed. R. Civ. Pro. 26(b)(3)(B))). The D.C. Circuit has stated that any document "prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5," with no mention of the *Mead Data* caveat that the information must be shown to be confidential. *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C.Cir.1997). In any case, the distinction between the attorney work product doctrine and attorney-client privilege

more generally is not of significance here because the Court finds that the two e-mails are not attorney work product.

The Court finds that the two e-mails do not fall under the attorney work product doctrine because the e-mails are communications to and from clients regarding litigation, rather than actual preparation by attorneys for litigation (or anticipated litigation). "The work product doctrine does not extend to every written document generated by an attorney; rather, work product covers only documents prepared in contemplation of litigation." *Senate of the Commonwealth of P.R. v. DOJ*, 823 F.2d 574, 586–87 (D.C.Cir.1987) (quotations omitted). The work product doctrine exists to ensure "[p]roper preparation of a client's case," *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); it is described under the subheading "Trial Preparation" in Federal Rule of Civil Procedure 26(b). The documents at issue here *relate* to litigation—Zander's case in North Carolina—but, in the Court's view, after having reviewed the documents, it would not be fair to say they constitute "preparation" for litigation, as they merely summarize the case very generally in lay terms and instruct BOP employees on how to receive representation in the case. Such communications do fall under the broader attorney-client privilege, but they are not the "work product" of an attorney contemplated for protection by that doctrine. *Cf. Judicial Watch*, 432 F.3d at 367–68, 370 (finding that e-mail communications about whether and how to file an amicus brief fall under the work product doctrine).

Since the communications fall under the broader attorney-client privilege, the Magistrate Judge properly applied the *Mead Data* rule that the information should only be withheld if it is confidential, and then reviewed the documents for any such ma-terial and recommended release. The Court agrees with this assessment, with one exception. The Court believes that the second sentence of the second paragraph of the e-mail dated March 18, 2010, is not publicly available information, as this sentence is a characterization of the recipient's involvement in the matter. Hence, this information is confidential and must also be redacted. The Court otherwise accepts the recommendation from the Magistrate Judge and will order the documents released as redacted by the Magistrate Judge with this one additional redaction.

c. *Adequacy of Search*

■ The Magistrate Judge recommends granting summary judgment to BOP regarding the adequacy of its search. R & R at 15. The Magistrate Judge considered and rejected Zander's "wild allegations of a BOP cover up to conceal its behavior," as well as Zander's argument that the uncovering of a document that BOP did not immediately disclose reveals the inadequacy of the search that was performed. R & R at 14–15. Zander objects to this recommendation, reiterating his argument that the discovery of previously undisclosed additional documents by BOP shows that the search was inadequate and his allegations of "a continuing concatenation of criminal conduct" by defendants. Pl.'s Objections at 5–8.

■ The Court will accept the Magistrate Judge's recommendation with respect to this objection. That BOP failed to turn up a limited number of responsive documents in its search does not show the search was inadequate. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C.Cir.2003) (citing *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 892 n. 7 (D.C.Cir.1995); *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C.Cir.1994)). Further-

more, " 'purely speculative claims about the existence and discoverability of other documents' " cannot overcome the presumption of good faith accorded agency affidavits representing a thorough search. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C.Cir.1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981)).

### d. *Vaughn Index*

 Finally, Zander objects to the Report and Recommendation because the Magistrate Judge ordered defendants to turn over documents for *in camera* review, rather than provide a *Vaughn* index with respect to the documents. Under *Vaughn*, 484 F.2d at 826–28, agencies "resisting FOIA disclosure [must] index the information they are withholding and [ ] provide nonconclusory justifications for doing so." *Roth v. DOJ*, 642 F.3d 1161, 1172 (D.C.Cir. 2011). Zander accurately states the rule regarding a *Vaughn* index: "an agency in possession of material it considers exempt from FOIA [must] provide the requestor with a description of each document being withheld, and an explanation of the reason for the agency's nondisclosure." *Oglesby v. Dep't of Army*, 79 F.3d 1172, 1176 (D.C.Cir.1996). But the reason why an agency must provide a *Vaughn* index is to enable a FOIA requestor to challenge the withholdings in court. Here, that function has been served by *in camera* review and the Report and Recommendation, as well as this Memorandum Opinion. Both the Magistrate Judge and now the Court have reviewed the documents in their entirety and ruled on whether and to what extent the exemptions apply. And the documents have been fully described for plaintiff through this process. Having received a full explanation of what the documents are and why they are being withheld or disclosed with redactions, Zander no longer has a right to a *Vaughn* index, which

would provide no further information. Although *in camera* review is not favored, *see Hayden v. N.S.A.*, 608 F.2d 1381, 1387 (D.C.Cir.1979), the Court sees no reason at this point to overrule the Magistrate Judge's approach. Hence, the Court rejects this objection to the Report and Recommendation.

### IV. *Conclusion*

For these reasons, the Court accepts the Magistrate Judge's recommendation regarding the adequacy of defendants' search and the portions of Zander's FOIA requests that should be denied for failure to exhaust administrative remedies. The Court rejects Zander's objection regarding a *Vaughn* index; under the circumstances, a *Vaughn* index is not required. The Court also rejects the Magistrate Judge's recommendation regarding disclosure of the video; the video may be withheld. No further action is required on these matters. The Court accepts with one small modification the Magistrate Judge's recommendation with respect to the documents submitted for *in camera* review. Defendants will be ordered to release these documents to Zander as redacted by the Magistrate Judge with the one additional redaction described above. Accordingly, the cross-motions for summary judgment will each be granted in part and denied in part and the Court will order the redacted documents to be released to Zander. A separate order has been issued on this date.

### *MEMORANDUM OPINION, ORDER & INDICATIVE RULING*

Before the Court is a motion for reconsideration of its earlier ruling in this Freedom of Information Act (FOIA) case. Plaintiff Robert A. Zander, who was previously incarcerated in a Bureau of Prisons facility, requested information relating to

his incarceration under FOIA. In response to his requests, the Department of Justice and Bureau of Prisons ("defendants") released some records but withheld other material. Zander sued. After the parties filed motions and cross-motions for summary judgment, the Court referred the matter to a Magistrate Judge, who then issued a Report and Recommendation recommending that each side's motion be granted in part and denied in part. In a June 20, 2012 Memorandum Opinion and Order, this Court reviewed the Magistrate Judge's recommendations and, as to the material subject to the motion for reconsideration, accepted them with one minor modification.[1] The Court then stayed the Order pending appeal.

Defendants have now filed a Rule 60(b) motion seeking reconsideration of the Court's ruling insofar as it orders disclosure of documents defendants assert are protected by attorney-client privilege, Memorandum Opinion 9–15 (June 20, 2012) [Docket Entry 51]. *See* Fed.R.Civ.P. 60(b)(1), (6).[2] Upon careful review of the parties' new submissions and based on the Court's own research, the Court believes that this is a circumstance where reconsideration as to part of the earlier decision would be appropriate. As explained below, the Court would hence grant, in part, defendants' motion if the D.C. Circuit remanded the case.

### *JURISDICTION*

Although neither defendants nor Zander address the question of jurisdiction, this Court must do so independently. The Court does not have jurisdiction to provide defendants relief at this time. A day after filing their motion for reconsideration, defendants filed a notice of appeal, which "confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *United States v. DeFries,* 129 F.3d 1293, 1302 (D.C.Cir.1997) (per curiam) (internal quotation marks omitted). While the pendency of a Rule 60 motion suspends the notice of appeal if that motion is filed within 28 days after entry of judgment, defendants filed their Rule 60 motion on August 15, 2012, 56 days after judgment was entered; accordingly, the notice of appeal in this case was effective when filed. *See* Fed. R.App. P. 4(a)(4)(B)(i) (pendency of motions listed in Rule 4(a)(4)(A) suspends notice of appeal); Fed. R.App. P. 4(a)(4)(A)(vi) (listing motion "for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered."); *see also Nat'l Black Police Ass'n v. District of Columbia,* 108 F.3d 346, 353 n. 3 (D.C.Cir.1997) ("Rule 60(b) motion … only suspends a notice of appeal if it is filed [the number of days designated by Federal Rule of Appellate Procedure 4(a)(4)] after the judgment is entered").

When a timely motion for relief is made and the Court lacks authority to grant it because an appeal has been docketed, the Federal Rules of Civil Procedure permit the Court to "state … that it would grant the motion if the court of appeals remands for that purpose." Fed. R.Civ.P. 62.1(a)(3); *see also Hoai v. Vo,*

---

1. The Magistrate Judge recommended disclosure (with some redactions) of a video of Zander being removed from his cell, but this Court rejected that recommendation and ordered that video withheld. That, and certain other less important rulings, are not at issue in the motion for reconsideration.

2. They also assert that the two emails are protected by work-product immunity. The Court rejected that argument in its June 20th Opinion and defendants have pointed to no error in that ruling.

935 F.2d 308, 312 (D.C.Cir.1991) ("District Court may consider the 60(b) motion and, if the District Court indicates that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted."). Accordingly, this opinion shall indicate how the Court would rule if the case were remanded by the D.C. Circuit.

## STANDARD OF REVIEW

Rule 60(b) allows the Court to relieve a party from "a final judgment, order, or proceeding" in a limited set of circumstances, including "mistake, inadvertence, surprise, or excusable neglect." Fed. R.Civ.P. 60(b)(1). The Court may also relieve a party for "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6). "Relief under Rule 60(b)(1) motions is rare; such motions allow district courts to correct only limited types of substantive errors." *Hall v. CIA*, 437 F.3d 94, 99 (D.C.Cir.2006). Rule 60(b)(6), too, sets "a very high bar": "courts should grant Rule 60(b)(6) motions only in 'extraordinary circumstances.'" *Kramer v. Gates*, 481 F.3d 788, 791, 792 (D.C.Cir.2007) (quoting *Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 95 L.Ed. 207 (1950)). Ultimately, however, "the district judge, who is in the best position to discern and assess all the facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion." *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C.Cir.1996) (quoting *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C.Cir. 1988)).

## ANALYSIS

At issue are documents related to a civil action Zander filed in connection with his incarceration. They consist of several letters (and accompanying signed forms) from Bureau of Prisons employees seeking legal representation as well as two emails, one sent by an employee to the attorney and another sent by the attorney to several employees. Defendants assert that these communications would be protected by the attorney-client privilege in the civil discovery context, and so should be deemed covered by that privilege under FOIA exemption five. Accordingly, they contend that the D.C. Circuit's decision in *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242 (D.C.Cir.1977), which they read as establishing a narrower attorney-client privilege in the FOIA context, does not control. Upon further review, the Court agrees that all but one of the documents are protected from disclosure, although not entirely for the reasons defendants suggest.

 FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The test under this provision, known as exemption five, is "whether the documents would be routinely or normally disclosed upon a showing of relevance." *FTC v. Grolier Inc.*, 462 U.S. 19, 26, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (internal quotation marks omitted). The D.C. Circuit first interpreted the attorney-client privilege in the FOIA context in *Mead Data*. *See* 566 F.2d 242. Considering exemption five's applicability to several documents authored by attorneys and communicated to agency employees, *see id.* at 249–50, the court recognized "that the attorney-client privilege has a proper role to play in exemption five cases." *Id.* at 252. After discussing the purposes of the privilege in the civil discovery context, the court stated that "[w]e see no reason why this same protection should not be extended to an agency's communications with its

attorneys under exemption five." *Id.* Nonetheless, it ordered that the agency disclose the documents unless it could make a further showing that the documents were based on confidential information supplied by the employees because "[i]n the federal courts the attorney-client privilege does extend to a confidential communication from an attorney to a client, but only if that communication is based on confidential information provided by the client." *Id.* at 254 (footnote omitted).

██ In so holding, *Mead Data* interpreted the attorney-client privilege in general, rather than importing a new limitation for the FOIA context. As subsequent D.C. Circuit cases have recognized, the *Mead Data* limitation that the "communication '[must be] based on confidential information provided by the client' ... applies generally to attorney-client privilege cases whether or not in the context of the FOIA." *Brinton v. Dep't of State,* 636 F.2d 600, 603–04 (D.C.Cir.1980) (quoting *Mead Data,* 566 F.2d at 254); *see also In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984) (non-FOIA case citing *Mead Data* for the proposition that "[c]ommunications from attorney to client are shielded if they rest on confidential information obtained from the client").[3] Giving the same meaning to attorney-client privilege in both the discovery and FOIA contexts comports with subsequent holdings that FOIA's plain language "point[s] clearly, unequivocally, to the incorporation of all civil discovery rules into FOIA Exemption (b)(5)." *See Martin v. Office of Special Counsel,* 819 F.2d 1181, 1185 (D.C.Cir.1987); *see also United States v. Weber Aircraft Corp.,* 465 U.S. 792, 802, 104 S.Ct. 1488, 79 L.Ed.2d 814

(1984) (refusing "to look beyond the plain statutory language" of exemption five).

Because *Mead Data* interprets the attorney-client privilege in general, it is consistent with subsequent cases that stress that FOIA may not be used as a supplement to civil discovery—as it could be if the attorney-client privilege were less protective under FOIA. *See Weber Aircraft Corp.,* 465 U.S. at 801, 104 S.Ct. 1488 ("[R]espondents' contention that they can obtain through the FOIA material that is normally privileged would create an anomaly in that the FOIA could be used to supplement civil discovery. We have consistently rejected such a construction of the FOIA."); *Martin,* 819 F.2d at 1186 ("allow[ing] FOIA to be used as a supplement to civil discovery ... undercut[s] the exemption's apparent function ... [and] it also runs afoul of the decisions of the Supreme Court"). Indeed, if certain attorney-client communications were subject to disclosure under FOIA, there would be little point in protecting them in civil discovery, for attorneys and clients—knowing that communications are subject to revelation through a FOIA request—would still inhibit their discussions. *Cf. Upjohn Co. v. United States,* 449 U.S. 383, 393, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."). *Mead Data,* then, is consistent with subsequent D.C. Circuit and Supreme Court decisions, and remains good law that the Court must apply here.

██ *Mead Data's* confidential information requirement, however, is relevant

---

3. At the outset of its exemption five discussion, the *Mead Data* opinion does state that "discovery rules should be applied to FOIA cases only by way of rough analogies," 566 F.2d at 252 (internal quotation marks omit-

ted). But in discussing privileges, and specifically the attorney-client privilege, *Mead Data* concludes that the exemption "encompasses the attorney-client privilege" in its entirety. *See id.*

to only one of the disputed documents: that limitation applies only to communications from an attorney to a client, not those from a client to an attorney. The attorney-client privilege, at its core, protects communications from a client to an attorney. *See Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged. The purpose of the privilege is to encourage clients to make full disclosure to their attorneys." (citations omitted)). The question hence arises "whether privileges are two-way streets[,] [f]or example, as a holder of the attorney-client privilege, may the client bar testimony not only of what the client told the attorney but also of what the attorney told the client." Edward J. Imwinkelried, *The New Wigmore: Evidentiary Privileges* § 6.6.4 (2012). Courts now overwhelmingly agree that the privilege protects some statements by the attorney, although they vary "as to the precise extent of the application of the privilege to the professional's statements." *Id.*; *see also Mead Data,* 566 F.2d at 254 n. 25 (discussing and rejecting possibility that attorney-client privilege should be "narrowly construed to apply only to communications of the client and not to the advice and opinions provided by his attorney"). In *Mead Data,* the D.C. Circuit resolved that very question of the privilege's scope, holding that "[t]here is *an additional limitation* on the attorney-client privilege . . . for those communications that *originate from the lawyer* rather than from the client. *Mead Data* stated that when the attorney communicates to the client, the privilege applies only if the communication 'is based on confidential information provided by the client.'" *Brinton,* 636 F.2d at 603 (emphasis added) (quoting *Mead Data,* 566 F.2d at 254); *see also* Imwinkelried § 6.6.4 & n. 113 (citing *Mead Data* as well

as subsequent D.C. Circuit cases as adopting "[t]he intermediate view" "that the privilege attaches to any communication by the professional that, in a broad sense, is 'based upon a privileged communication from the client'"). The D.C. Circuit laid out the resulting framework in another FOIA exemption five case:

> The attorney-client privilege protects confidential communications *from clients to their attorneys* made for the purpose of securing legal advice or services. The privilege also protects communications *from attorneys to their clients* if the communications rest on confidential information obtained from the client. In the governmental context, the "client" may be the agency and the attorney may be an agency lawyer.

*Tax Analysts v. IRS,* 117 F.3d 607, 618 (D.C.Cir.1997) (emphasis added) (citing *Mead Data,* 566 F.2d at 254) (other citation and internal quotation marks omitted).

 Applying that framework to the documents at issue here, the letters from Bureau of Prisons employees requesting legal representations are protected from disclosure. They are "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," which "[t]he attorney-client privilege protects" categorically, regardless of the confidentiality of the information the communications contain. *See Tax Analysts,* 117 F.3d at 618; *see also Upjohn,* 449 U.S. at 396, 101 S.Ct. 677 ("The client cannot be compelled to answer the question, 'What did you say or write to the attorney?'" (internal quotation marks omitted)). The email dated May 21, 2009, was sent from an employee to an agency attorney, and so it is protected for the same reasons.

 The analysis differs for the final document, an email from an attorney to

several employees dated March 18, 2010. Because it is an attorney's communication to his clients, the email falls within *Mead Data's* additional limitation and is only privileged if it rests on confidential information obtained from the clients. This email generally does not rest on such information, and is hence subject to disclosure. As the Court previously noted, however, one sentence of the email (the second sentence of the second paragraph) almost certainly rests on confidential information obtained from the client. It must therefore be redacted. *See Tax Analysts*, 117 F.3d at 619–20 (the "particular portions" of documents that "may reveal confidential information transmitted by [employees]" remain privileged). Because this sentence is separable from the remainder of the email, which is not itself privileged, redaction is appropriate. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). *Compare Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 371–72 (D.C.Cir.2005) (holding that "segregability is not required" for document protected by work-product immunity because, unlike a privilege, work-product immunity protects the facts themselves, so the document is immune in its entirety).

In short, the Court concludes that reconsideration is warranted here. The documents at issue, except for most of the March 18, 2010, email, are properly protected under the attorney-client privilege as it applies in civil discovery and hence under FOIA exemption five as well.

### CONCLUSION

For the reasons indicated above, the Court would amend, in part, its June 20, 2012 Memorandum Opinion and Order. It is hereby

**ORDERED** that [56] defendants' motion for reconsideration is **GRANTED IN PART** insofar as it seeks an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1(a)(3); it is further

**ORDERED** that, as the Court lacks authority to grant further relief unless the court of appeals remands the case, the motion is **HELD IN ABEYANCE** in all other respects; and it is further

**ORDERED** that, in accordance with Federal Rule of Civil Procedure 62.1(b), defendants shall promptly notify the Circuit Clerk of this ruling.

**SO ORDERED.**